Eric H. Gibbs (SBN 178658)
David Stein (SBN 257465)
Joshua Bloomfield (SBN 212172)
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
jjb@classlawgroup.com

Andrew N. Friedman
Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone:  (202) 408-4600
afriedman@cohenmilstein.com
dmcnamara@cohenmilstein.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| JOHN FERGUSON, KELLI BEAUGEZ, GREGORY STENSTROM on behalf of themselves and those similarly situated, | Case No: 18-cv-00206 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| vs. | <u>DEMAND FOR JURY TRIAL</u> |
| APPLE, INC. | <u>CLASS ACTION</u> |
| Defendant. | |

Plaintiffs John Ferguson, Kelli Beaugez, and Gregory Stenstrom, individually and on behalf of others similarly situated, bring this class action lawsuit against Defendant, Apple, Inc. ("Apple"), based upon personal knowledge of the facts pertaining to themselves, and upon information and belief as to all other matters, hereby allege as follows:

## INTRODUCTION

1.      Apple releases new iPhone models on a periodic basis; for example, it released the iPhone 6 and iPhone 7 in 2014 and 2016 respectively, also releasing "S" and "Plus" versions of those models roughly every other year.  Often around the same time it releases a new iPhone model, Apple updates the operating software (known as "iOS") that runs on the phones.  When Apple updates the iOS, Apple pushes the update for download on both the newest model and the older models.

2.      This case concerns Apple's decision to impose, through its iOS software, performance requirements that exceed the capabilities of the hardware on the iPhone SE, 6, 6 Plus, 6s, 6s Plus, 7, and 7 Plus (the "Subject iPhones").  Notably, with iOS 10 and subsequent iOS updates, these iPhone models, which had up to that point been functioning acceptably, began experiencing sudden shutdowns where the phones would lose all power and restart without warning.

3.      Apple responded by releasing iOS update 10.2.1 around January 2017, and later update 11.2.0.  But rather than restoring the iPhones to perform as they were previously capable, the updates only stopped the shutdowns by imposing a variety of drastic software throttles that slow down the performance, impair battery life, and reduce functionality of the phones—by as much as 60%.  Apple did not disclose that it was throttling performance and instead misrepresented to consumers that the updates were an improvement.

4.      Apple's actions thus steered consumers away from blaming Apple for the abrupt iOS-caused shutdowns, and instead made it seem like their phones were simply nearing the end of their useful lives due to the passage of time.  As a result, many people went out and bought new iPhones, while others have just suffered through using much slower phones, as they were under the mistaken belief that nothing could be done to rejuvenate them.

5.      Most recently, Apple was forced to admit that it used iOS updates 10.2.1 and 11.2.0

to intentionally slow down the computer processor of the devices to avoid sudden shutdowns.  As part of its admission, Apple told consumers that they could temporarily restore their phones' pre-iOS update performance by buying a new battery for their phone.  Many consumers are now paying or have paid Apple $30-$80 for a battery, and Apple is expected to take in upwards of $1.5 billion from the battery sales alone.  But replacing the battery is a temporary solution that cannot correct the underlying design incompatibility.

6.      Plaintiffs bring this proposed class action to seek appropriate remuneration and equitable relief in light of Apple's unlawful and deceptive conduct.  Plaintiffs seek a nationwide class under California law, consistent with Apple's terms of service for the iOS software agreements. Plaintiffs seek the following remedies: 1) Appropriate injunctive relief, including an order requiring Apple to modify the iOS to prevent it from intentionally degrading the performance and battery life of the Subject iPhones; prohibiting Apple from throttling future iPhone models, particularly without the express consent of affected consumers; and requiring Apple to tell Subject iPhone users that the iOS and iOS updates on the phones throttled the phones' performance; and 2) Remuneration from Apple to consumers in connection with the Subject iPhones' reduced performance and battery life, and as compensation for those who purchased replacement batteries and iPhones following the iOS-induced slowdowns.

## PARTIES

7.      Plaintiff John Ferguson purchased an iPhone SE. He is a citizen of California, and a resident of Yuba City.

8.      Plaintiff Kelli Beaugez leased an iPhone 7 as part of her cellphone service.  She is a citizen of Virginia, and a resident of Sterling.

9.      Plaintiff Gregory Stenstrom purchased an iPhone 6s Plus.  He is a citizen of Pennsylvania, and a resident of Glen Mills.

10.     Defendant, Apple, Inc., is a California corporation headquartered in Cupertino, California.  Apple designs and markets its iPhone devices throughout the United States. Decisions regarding how to market the phones and even Software Updates are made in Cupertino.

CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

11.     This is a class action, on behalf of more than one hundred putative class members, for damages that exceed $5,000,000.00, exclusive of interest and costs.

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d).

13.     Defendant is subject to personal jurisdiction in this Court because Defendant is headquartered here, and because Apple engages in substantial, continuous, systematic, and non-isolated business activity within the state of California.

14.     Venue is proper within this District because a substantial part of the events giving rise to the claims occurred in this District, namely that Apple determined how to disclose its Software Updates within this District.

## INTRADISTRICT ASSIGNMENT

15.     Assignment is proper to the San Jose division of this District under Local Rule 3-2(c)-(e), as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Santa Clara County, where Apple is headquartered.

## GENERAL ALLEGATIONS

**A.      Apple's Operating System and Software Updates**

16.     Apple is in the business of, among other things, designing and selling mobile devices known as iPhones. Models pertinent to this litigation include the iPhone SE, 6, 6 Plus, 6s, 6s Plus, 7, and 7 Plus.

17.     Apple also creates iPhone operating systems (or "iOS's") for its phones.  The operating system is the software that helps the device function and carry out commands and run applications.

18.     When Apple releases a new operating system or updates an existing operating system, it installs it on phones it is selling and making available for sale; installs it on phones it is repairing under warranty; and also alerts existing iPhone owners to download the updates through "push" notifications.  Operating system updates may solve existing problems, including security flaws and other bugs.

19.     Downloading iOS updates is functionally mandatory.  Apple's push notifications

continue until the iOS update is downloaded.  And without an update, the iPhone is likely to begin experiencing functionality problems.  For example, applications on the phone are likely to stop working because the latest updates for those applications often require the application to be run on the newer iOS.  iPhones that aren't updated may also become vulnerable to security vulnerabilities, since Apple does not push security updates for the older iOS.

20.     The push notification for the iOS 10.1.1 update, for example, looked like this:



21.     Clicking on "Details" or "Learn More" lists the supposed positives of the update. Never in connection with updates 10.1.1, 10.2.1, and 11.2.0, did Apple disclose that the updates would negatively impact the performance or utility of the Subject iPhones.  An example, for the iOS 10.2.1 update, appears below:



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14

22.     An example, for the iOS 11.2.0 update, appears below:



15    23.     The Apple iOS Software License Agreement terms that accompany Apple's software

16    state that the software "may be updated or replaced by future enhancements."

17    http://images.apple.com/legal/sla/docs/iOS11.pdf at §1(b).  The agreement also states that the terms

18    of use for the software will be "governed by and construed in accordance with the laws of the State

19    of California, excluding its conflict of law principles.  *Id*. at § 12.

20    24.     In consideration for their use of iOS, consumers agree to be locked into Apple's

21    content ecosystem.  All purchases of software applications must be made through Apple's "App

22    Store."  Consumers cannot interact directly with software vendors, guaranteeing that Apple will take

23    30 percent of each of their App Store transactions.  In short, Apple benefits greatly when consumers

24    use iOS-equipped smart phones.

25    **B.      Apple's iOS Software Caused Battery and Performance Problems in Subject**

26    **iPhones by Fall of 2016**

27    25.     Apple released iOS 10 in September 2016.  In the weeks and months that followed,

28    Apple pushed updates to iOS 10, including update 10.1.1 in October 2016 and 10.2.1 in January

6

2017.  Later, in September 2017, Apple released iOS 11.  Subsequently, Apple released a string of further iOS updates, including iOS 11.2.0.

26.     Starting in October 2016, iPhone owners who had downloaded the latest iOS updates were reporting that their iPhones were shutting down suddenly and without warning.  The shutdowns did not appear to be due to a lack of battery reserve, since when users rebooted their iPhones following the shutdown, the phones would immediately show substantial battery power remaining— often in the range of 30-40%.[1]

27.     By November 23, 2016, Apple's official Support Communities forum contained a thread that was 11 pages long and growing, with users detailing how iPhones were suddenly shutting down.[2]  The shutdown problem was affecting all of the Subject iPhones, including the iPhone 7, which was brand new.  One consumer posted that he had experienced the shutdown problem on his iPhone 7 even though the phone was only a week old.  By January 2017, at least one prominent tech journalist was referring to the shutdown problem as "infamous."[3]

28.     On November 30, 2016, Apple admitted that there was a problem which led the phones to "unexpectedly shut down."  But Apple claimed the problem affected only a "very small number of iPhone 6s devices," and Apple suggested a small-scale issue with the lithium ion batteries was the root cause of the problem.  Apple promised those purchasers a replacement battery free of charge.  The program covered the "the first three years after the first retail sale of the unit"—an acknowledgment by Apple that no phone in use less than three years should be experiencing such problems.

29.     Yet as Apple knew then or would soon discover, the shutdowns were not attributable solely to battery degradation as Apple implied; only after substantial use—about three years following purchase—would an iPhone battery be reasonably expected to degrade to the point that it

---

[1] Gordon Kelly, *Apple iOS 10.2.1 Has A Nasty Surprise*, Forbes (Jan. 24, 2017), https://goo.gl/8MefnM.

[2] *Id*.

[3] *Id*.

CLASS ACTION COMPLAINT

could no longer meet the phone's performance demands.  The relatively new iPhone 6 and 7 models were experiencing shutdowns because the phones hardware could not meet the performance demands created by the iOS and iOS updates.  Even as this became increasingly clear, Apple did not extend its initial program of providing free batteries to allow these phones to function properly throughout at least the first three years of their life.

### C.   Apple Surreptitiously Includes "Throttling" Technology in its iOS Upgrades

30.   Rather than revert to a version of the iOS that was compatible with the phones' hardware, or provide free batteries to meet the demands created by iOS updates, Apple opted to decrease unexpected shutdowns through "throttling." The throttling is implemented by, among other things, capping the iPhone CPU's maximum frequency well below its original maximum.  This meant slowing down processing on the phones, which entails, among other things, longer launch times for applications, lower frame rates when scrolling, backlight dimming, lower speaker volume by up to -3dB, frame rate reductions in some applications, and the need to reload applications upon launch.

31.   On January 25, 2017, Apple released iOS 10.2.1, which Apple said was compatible with Subject iPhones.  Through the iOS update, however, Apple introduced throttling as a way to avoid shutdowns in the iPhone SE, 6, 6 Plus, 6s, and 6s Plus.[4]

32.   Apple subsequently released iOS 11.2 on December 2, 2017.  Apple again claimed the update was compatible with Subject iPhones, and the iOS update introduced throttling to avoid shutdowns in the iPhone 7 and 7 Plus—even though those models were barely one year old.

33.   Upon downloading iOS 10.2.1 and then 11.2 (for those with an iPhone 7 or 7 Plus), existing iPhone users, like Plaintiffs, began to experience sluggish performance on their phone and decreased battery life.  But it was not known that Apple was deliberately slowing down older iPhones.[5]

---

[4] *Id.*

[5] M. Panzarino, https://www.theverge.com/2017/12/20/16800058/apple-iphone-slow-fix-battery-life-capacity, last accessed on Jan. 5, 2018.

8

34.     An analysis by Geekbench (which measures computer processing benchmarks) shows that after updating iPhones to an iOS that throttles performance, there were more "cluster points" where performance would slow down.  The chart below shows phone performance before and after iOS updates that use a "throttling" program.  Operations run smoothly until the battery dies.  The recent iOS updates bottle up user performance at several points:



35.     As explained, "where the peaks happen represents the cluster of phones running at that particular performance level.  And the height of the peaks (in blue) represents the relative frequency of benchmarks being performed at that performance level."  This translates to a real loss of performance.  For example, "the iPhone 6s is slowed down by nearly 60%."[6]  This "effectively turns the device's performance into that of a device 1-2 generations older."[7]  The "software throttle was not there when the phone was sold.  It was put in there to mitigate Apple's product liability [for unexpected shutdowns] without the customer's knowledge or consent. … Without the throttle the phones would shut down while still showing charge."

---

[6] https://seekingalpha.com/article/4133931-apple-wanted-know-iphone-throttling-scandal?page=2, last accessed on Jan. 5, 2018.

[7] *Id.*

CLASS ACTION COMPLAINT

**D.     The iOS Updates Also Reduce Battery Life**

36.     The throttling technology—aimed at preventing unexpected shutdowns—also increases battery depletion.

37.     For example, a study comparing iPhones using the iOS 10.2 system found that on average, the phone reached 0% battery life after 240 minutes.  Meanwhile, iPhones operating on the iOS 11 system on average reached 0% battery life after just 96 minutes.[8]

38.     As a result of the shorter battery life, many consumers will just leave their iPhone continuously plugged in.  But while this will avoid a quick battery drain from shutting off the device, it actually further erodes battery life and the device itself. As noted in Popular Science,

> If you do fill your battery all the way up, don't leave the device plugged in. Instead, follow the shallow discharge and recharge cycle we just mentioned. This isn't a safety issue: Lithium-ion batteries have built-in safeguards designed to stop them from exploding if they're left charging while at maximum capacity. **But in the long term, electronics will age faster if they're constantly plugged in while already charged to 100 percent**.[9]

**E.     Apple's Admissions and Reduced Battery Offer**

39.     On December 20, 2017, Apple admitted that the Software Updates indeed impact performance. Apple stated:

> Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to smooth out the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions. We've now extended that feature to iPhone 7 with iOS 11.2, and plan to add support for other products in the future.[10]

40.     Apple explained that starting with its iOS 10.2.1 update, the "iOS dynamically

---

[8] https://www.wandera.com/blog/ios-11-battery-drain/, last accessed on Jan. 4, 2018.

[9] Nield, "How to Charge Your Devices the Right Way," Aug. 23, 2017, https://www.popsci.com/charge-batteries-right#page-4, last accessed on Jan. 4, 2018.

[10] M. Panzarino, "Apple addresses why people are saying their iPhones with older batteries are running 'slower'", Dec. 20, 2017, https://techcrunch.com/2017/12/20/apple-addresses-why-people-are-saying-their-iphones-with-older-batteries-are-running-slower/, last accessed on Jan. 5, 2018.

manages the maximum performance of some system components when needed to prevent a shutdown.  While these changes may go unnoticed, in some cases users may experience longer launch times for apps and other reductions in performance."[11]

41.     Apple acknowledged customer complaints, but blamed some performance issues on the battery degradation:

> Over the course of this fall, we began to receive feedback from some users who were seeing slower performance in certain situations. Based on our experience, we initially thought this was due to a combination of two factors: a normal, temporary performance impact when upgrading the operating system as iPhone installs new software and updates apps, and minor bugs in the initial release which have since been fixed.
>
> We now believe that another contributor to these user experiences is the continued chemical aging of the batteries in older iPhone 6 and iPhone 6s devices, many of which are still running on their original batteries.

42.     Although Apple blames normal battery deterioration, other smart phone manufacturers use similar lithium-ion batteries and have not experienced the same problems or resorted to throttling their phones' performance.  Samsung, for example, guarantees its Galaxy S7 and Note & lithium-ion batteries will retain 95% of their capacity for at least two years; likewise, LG and Google warranty their smart phones' batteries for two years.[12]

43.     Apple's "solution" for pushing operating system upgrades that surreptitiously degraded performance was to lower the price of battery replacements from $79 to $29 through the end of 2018.  Even with the price reduction, Apple is expected to take in upwards of $1.5 billion from the battery sales alone; this revenue estimate does not incorporate the substantial sums Apple has accrued by selling new iPhones to consumers who believed their older models had become outdated, when in reality their phones were being throttled.

---

[11] http://bgr.com/2017/12/28/iphone-battery-apple-apology-letter-battery-replacement/, last accessed on Jan. 4, 2018.

[12] Gordon Kelly, *Why Your iPhone Is Slowing Down*, Forbes (Dec. 21, 2017), https://goo.gl/5pWf1X.

CLASS ACTION COMPLAINT

44.     What's more, the demand for batteries is creating a backlog.[13]  According to an analysis by Barclay's, "[a]s of Jan 2nd, 77% of iPhone users are using iPhone 6, 6 Plus, 6s, 6s Plus, 7, 7 Plus, and SE.  Based on a conservative estimate of 675M total iPhone installed base as of Dec-Q, this implies 519M users are subject to or mostly 'eligible' for this offer."[14]  iFixit's Kyle Wiens has hypothesized that it may not even be possible for every iPhone customer eligible to take advantage of the program if they wanted to:

> Apple reportedly has 47,000 retail employees. If they trained all of them to do iPhone battery swaps, and they did nothing but that, it would take 2.7 years to clear out the backlog. But by then, more iPhones would need new batteries.[15]

45.     Not downloading the iOS has its risks.  Apple recently announced that all its iPhones, iPads and Mac computers are affected by two recently disclosed processor flaws called Spectre and Meltdown.[16]  These flaws present potential security breaches.  Apple stated it has released patches to defend against Meltdown in iOS 11.2, macOS 10.13.2, and tvOS 11.2.  Thus, customers who have yet to download the iOS updates to avoid sluggish performance and battery drain leave themselves exposed to greater risks of a security breach.

46.     The iOS upgrades have put customers in a terrible situation.  Customers unhappy with their iPhone's performance after the software update cannot undo it.  They could purchase a new battery for their existing iPhone, buy a newer iPhone compatible with the iOS 11 and later systems, at a cost between $699 to over $1000, or run the risk of a safety breach.

---

[13] *See, e.g.,* https://www.washingtonpost.com/news/the-switch/wp/2018/01/04/run-dont-walk-to-replace-your-iphone-battery-for-29/?utm_term=.97e83c7d302c, last accessed on Jan. 5, 2018. See also http://fortune.com/2018/01/04/apple-iphone-battery-upgrade-wait/, last accessed on Jan. 5, 2018 ("If you want to upgrade your iPhone battery, expect to have to wait for several weeks.").

[14] https://www.barrons.com/articles/apples-battery-gate-fix-good-pr-move-may-hurt-iphone-sales-says-barclays-1514994135?mg=prod/accounts-barrons, last accessed on Jan. 5, 2018.

[15]https://9to5mac.com/2018/01/04/swap-apocalypse-iphone-battery-replacement/, last accessed on Jan. 5, 2018.

[16] http://money.cnn.com/2018/01/04/technology/business/apple-macs-ios-spectre-meltdown/index.html, last accessed on Jan. 5, 2018.

CLASS ACTION COMPLAINT

### F.       Plaintiffs' Experiences

47.       Plaintiff John Ferguson purchased his iPhone SE in California in approximately 2015.

48.       In the years that followed, Plaintiff Ferguson periodically downloaded iOS updates pushed by Apple, including for iOS 10 and iOS 11. Plaintiff Ferguson reviewed the notifications and brief descriptions of the software updates, which did not alert him that updating the operating system could reduce its performance.

49.       After downloading the iOS updates, Plaintiff Ferguson's phone started to perform more sluggishly. He noticed it would take more time to run applications.  He also had to charge it constantly.  After charging it all night, he found his phone it could not go more than a few hours until it was down to 50% charged.

50.       Plaintiff Kelli Beaugez leased her iPhone 7 in 2015.

51.       In the years that followed, Plaintiff Beaugez periodically downloaded iOS updates pushed by Apple, including for iOS 10 and iOS 11.  Plaintiff Beaugez reviewed the push notifications and brief descriptions of the software upgrades, which did not alert her that updating the operating system could reduce its performance.

52.       After the upgrades, she noticed a degradation in performance.  Applications would "hang" and not open.  She noticed her battery life would plummet from 100% charge to 30% in a few hours.

53.       Frustrated with the performance of her phone, she leased an iPhone 8 in late 2017. She would not have obtained her iPhone 8 but for the performance and battery problems caused by the iOS upgrade.

54.       Plaintiff Gregory Stenstrom purchased his iPhone 6s Plus in or around the fall of 2015.

55.       In the years that followed, Plaintiff Stenstrom periodically downloaded the iOS updates pushed by Apple, including for iOS 10 and iOS 11.  Plaintiff Stenstrom reviewed the push notifications and brief descriptions of the software upgrades, which did not alert him that updating the operating system could reduce its performance.

56.       After the upgrades, he noticed a degradation in performance.  His phone experiences

1  abrupt shutdowns and sluggishness.

2  **CLASS ACTION ALLEGATIONS**

3  57.    Plaintiffs seek certification of a Class defined to include:

4
5      All entities and individuals who have purchased or leased a new Subject
       iPhone (*i.e.*, an iPhone SE, 6, 6 Plus, 6s, 6s Plus, 7, or 7 Plus) in the
       United States before December 20, 2017.
6

7  58.    Excluded from the Class are Apple and its employees, officers, directors, legal

8  representatives, successors and wholly or partly owned subsidiaries or affiliated companies; class

9  counsel and their employees; and the judicial officers and their immediate family members and

10  associated court staff assigned to this case.

11  59.    The Class can be readily identified from Apple's records of iPhone owners, and its

12  own data as to who has updated their systems.  For instance, when iPhones are activated, and when

13  various functions are performed on them, including downloading an iOS Software Update, the

14  device transmits and Apple receives, collects, and maintains, both a "unique hardware identifier" for

15  the iPhone as well as "unique account identifiers" associated with the owner's Apple ID.[17]

16  **A.    Numerosity**

17  There are tens of millions of Class members in the United States.  Before the release of the

18  iPhone 7, for example, it was reported that there were 50 million iPhone 6 users and 20 million

19  iPhone 5 or earlier users.[18]

20  **B.    Typicality**

21  60.    Plaintiffs' claims are typical of the claims of the Class.  Like members of the Class,

22  Plaintiffs purchased or leased a Subject iPhone and/or downloaded one or more iOS updates on

23  Subject iPhones they own, which imposed performance demands that the phones' hardware could

24  not meet, throttled the phones' performance, and otherwise negatively impacted the performance and

25  utility of the phones.

26  _____

27  [17] *See, e.g.,* http://images.apple.com/legal/sla/docs/iOS11.pdf at 2, § 2(b).

28  [18] http://bit.ly/2pDHcM7.

14

**C.    Adequacy of Representation**

61.    Plaintiffs will fairly and adequately protect the Class' interests and have retained counsel competent and experienced in class-action litigation. Plaintiffs' interests are coincident with, and not antagonistic to, absent Class members' interests because by proving their individual claims, they will necessarily prove the liability of Apple to the Class as well.  Plaintiffs are cognizant of, and determined to, faithfully discharge their fiduciary duties to the absent Class members as their representatives.

62.    Plaintiffs' counsel have substantial experience in prosecuting class actions, including against Apple.  Plaintiffs and their counsel are committed to vigorously prosecuting this action, have the financial resources to do so, and do not have any interests adverse to the Class.

**D.    Commonality and Predominance**

63.    There are numerous questions of law and fact, the answers to which are common to each Class and predominate over questions affecting only individual members, including the following:

a)    Whether Apple installed iOS and pushed updates, including iOS 10.1.1, 10.2.1, and 11.2.0, to Subject iPhones that imposed performance demands beyond the capabilities of the phones' hardware;

b)    Whether Apple installed iOS and pushed iOS updates, including 10.2.1 and 11.2.0, to Subject iPhones, designed to throttle the phones' performance, degrading computing performance and battery life;

c)    Whether Apple's pushing of iOS updates that impose performance demands beyond the capabilities of the phones' hardware or which throttle the phones' performance constitutes a trespass to chattel;

d)    Whether Apple's pushing of iOS updates that impose performance demands beyond the capabilities of the phones' hardware or which throttle the phones' performance constitutes a breach of an express contractual term or implied contractual duty;

e)    Whether Apple's pushing of iOS updates that impose performance demands

beyond the capabilities of the phones' hardware or which throttle the phones'

performance constitutes an unfair or deceptive act or practice under California law;

f) Whether Apple's deceptive and unlawful conduct led to its unjust enrichment such that Apple should be required to provide restitution to the Class; and

g) Whether Plaintiffs' and Class members are entitled to injunctive relief to halt Apple's unlawful conduct.

**E.     Superiority and Manageability**

64.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the individual Class members is impracticable. Likewise, because the damages suffered by each individual Class member are relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually.  And the burden imposed on the judicial system by individual litigation would be enormous.

65.     The prosecution of separate actions by the individual Class members would also create a risk of inconsistent or varying adjudications.  The conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

**<u>COUNT I</u>**

**FRAUDULENT CONDUCT IN VIOLATION OF
CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 et seq.**

66.     Plaintiffs repeat and re-allege the allegations in the paragraphs above as if fully set forth herein.

67.     Plaintiffs assert this cause of action on behalf of themselves and the Class.

68.     Plaintiffs are entitled to assert this cause of action for Apple's violations of California Business and Professions Code § 17200 et seq. because Apple's software agreement requires application of California law.

69.     California Business & Professions Code § 17200 et seq. (the "UCL") prohibits unfair competition, that is, any unfair, unlawful, or a fraudulent business practice.

70.     Apple violated the "fraudulent" prong of the UCL by making material misrepresentations and failing to disclose material information regarding certain iOS updates, including but not limited to 10 and 11, and its variants.  In particular, Apple represented that the updates were to fix software bugs and to improve security and Apple failed to say that the updates imposed performance demands that the phones' hardware could not meet, throttled the phones' performance, and otherwise negatively impacted the performance and utility of the phones.

71.     These material misrepresentations and nondisclosures were likely to mislead reasonable consumers and the general public.  Apple's misrepresentations and nondisclosures were material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase and product-updating decisions.

72.     Plaintiffs reasonably relied on Apple's material misrepresentations and/or nondisclosures and lost money and/or property as a result in that, had they known the truth, they would not have elected to download the iOS updates and thus would not have Subject iPhones of degraded performance and utility and/or would not have purchased new iPhones and/or iPhone batteries after the update that they otherwise would not have purchased.

73.     Plaintiffs seek an order enjoining Apple from committing such fraudulent business practices immediately and in the future; an order requiring Apple to provide all potentially-affected iPhone owners with reasonable notice that the poor performance of those devices is caused by Apple's own modifications; restitution for themselves and all Class members in connection with their purchase of iPhones and iPhone batteries; and/or all applicable pre- and post-judgment interest. Plaintiffs also seek attorneys' fees and costs, for themselves and the Class, under Cal. Code Civ. Proc. § 1021.5.

## COUNT II

### UNFAIR CONDUCT IN VIOLATION OF
### CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 et seq.

74.     Plaintiffs repeat and re-allege the allegations in the paragraphs above as if fully set forth herein.

75.     Plaintiffs assert this cause of action on behalf of themselves and the Class.

17

76.     Apple's conduct violated the "unfair" prong of the UCL because it was immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and the Class.  Apple's practice was also contrary to legislatively declared public policy and the harm it caused to consumers outweighed its utility, if any.

77.     Apple sold Subject iPhones that were capable of a certain level of performance and functionality, and then pushed iOS updates onto those phones that imposed performance demands that the phones' hardware could not meet, throttled the phones' performance, and otherwise negatively impacted their performance and utility.  This conduct had the effect of making it seem like the Subject iPhones had become outdated and in need of replacement simply due to the passage of time, instead of alerting users to the fact that the phones were not capable of meeting the performance demands that Apple imposed on them.

78.     As a direct and proximate result of Apple's unfair conduct, Plaintiffs and the members of the Class have lost money and/or property in that Apple's unfair conduct caused Plaintiffs' and Class members' phones to experience degraded performance and utility leading many to purchase new iPhones and/or iPhone batteries that they otherwise would not have purchased.

79.     Plaintiffs seek an order enjoining Apple from committing such unfair business practices immediately and in the future; an order requiring Apple to provide all potentially-affected iPhone owners with reasonable notice that the poor performance of those devices is caused by Apple's own modifications; restitution for themselves and all Class members in connection with their purchase of iPhones and iPhone batteries; and/or all applicable pre- and post-judgment interest. Plaintiffs also seek attorneys' fees and costs, for themselves and the Class, under Cal. Code Civ. Proc. § 1021.5.

## COUNT III

### TRESPASS TO CHATTELS

80.     Plaintiffs repeat and re-allege the allegations above as if fully set forth herein.

81.     Plaintiffs assert this cause of action on behalf of themselves and the Class.

82.     Plaintiffs and the Class were in possession of personal property in the form of their Subject iPhones.

83.    Apple interfered with Plaintiffs' and the Class's possession of their iPhones by pushing software updates that substantially degraded the phones' performance and utility.

84.    Apple intentionally pushed iOS updates, including but not limited to iOS 10 and 11 and their variants, despite knowing that the updates imposed performance demands that the phones' hardware could not meet, throttled the phones' performance, and otherwise negatively impacted the performance and utility of the phones.

85.    Apple did not disclose the negative impact of the iOS updates, and Plaintiffs and Class members had no reason to know either when they acquired their iPhones or when they downloaded iOS updates that Apple was pushing iOS updates that imposed performance demands that the phones' hardware could not meet, throttled the phones' performance, and otherwise negatively impacted the performance and utility of the phones.

86.    Apple functionally forced consumers to update their iPhones to the latest version of iOS.  Users who don't update face constant push notifications encouraging them to update.  Users are not given the option of not updating: the push notifications give the user the options to "Install Now" or "Later."  Users who select "Later" are prompted to select a specific time for the phone to install the update without further user input.  iPhones that are not updated also face a loss of functionality for installed applications, which often require the latest version of iOS, and are vulnerable to hackers because security updates are not provided for older versions of iOS.  Not updating is not an option that is offered or supported by Apple.

87.    As a direct and proximate result of Apple's interference with their iPhones, Plaintiffs and the Class suffered injury, including that their iPhones suffered a permanent and long-term degradation in performance, utility, condition, quality, and value.  As a result, Plaintiffs and/or Class members were required and induced to purchase new iPhones and/or new batteries to their detriment and Apple's benefit.

**COUNT IV**

**BREACH OF CONTRACT**

88.    Plaintiffs repeat and re-allege the allegations above as if fully set forth herein.

89.    Plaintiffs assert this cause of action on behalf of themselves and the Class.

90.     Apple requires everyone who downloads an iOS update, including iOS 10, 10.1.1, 10.2.1, and 11.2.0, to agree to the terms of a contract: its iOS Software License Agreement. Plaintiffs and the Class entered into contracts with Apple in connection with their use of an iPhone, using an Apple iOS, and/or by downloading an iOS update, including Apple's software license.

91.     Apple's Software License Agreement terms provide in part: "12. Controlling Law and Severability. **This License will be governed by and construed in accordance with the laws of the State of California, excluding its conflict of law principles**."[19]

92.     In the iOS Software License Agreement, Apple permits the iPhone device owner "to use the iOS Software on a single Apple-branded iOS Device." *Id.* at 1, § 2(a).

93.     Plaintiffs performed their obligations under the iOS Software License Agreement.

94.     Apple breached its iOS Software License Agreement by providing software that could not be "used" as intended since the operating system software impaired the performance of the Subject iPhones, reducing their ability to function as a "mobile" device.

95.     As a result of Apple's breach of its promises in the iOS Software License Agreement, Plaintiffs, and those similarly situated, have suffered damages in the form of the loss of the value of their existing iPhone.

96.     Accordingly, Plaintiffs, and all those similarly situated, seek specific performance and damages for Apple's breach of contract.

## COUNT V

### BREACH OF IMPLIED DUTY TO PERFORM WITH REASONABLE CARE

97.     Plaintiffs repeat and re-allege the allegations above as if fully set forth herein.

98.     Plaintiffs assert this cause of action on behalf of themselves and the Class.

99.     Apple requires everyone who downloads an iOS update, including iOS 10, 10.1.1, 10.2.1, and 11.2.0, to agree to the terms of a contract: its iOS Software License Agreement. Plaintiffs and the Class entered into contracts with Apple in connection with their use of an iPhone,

---

[19] http://images.apple.com/legal/sla/docs/iOS11.pdf

CLASS ACTION COMPLAINT

using an Apple iOS, and/or by downloading an iOS update, including Apple's software license. They did so anticipating the software updates would improve phone performance, and not degrade performance and battery life.

100.    Plaintiffs and Class members met all or substantially all of their contractual obligations, including only using Apple licensed operating systems.

101.    Apple was obligated to provide operating systems that would enhance iPhone operations and not degrade performance or battery life.  This obligation is implied by Apple's conduct, its descriptions of the pushed operating systems as "upgrades," and the license agreement itself.

102.    Under California law, Apple was required to perform its contractual obligations competently and with reasonable care.  Apple breached that duty by providing software operating systems that degraded the performance and battery life of the iPhones its customers purchased.

103.    Had Apple used reasonable care, it would have provided operating systems that improved the performance of its iPhones, or at least not degraded the performance.

104.    As a result of Apple's failure to provide operating systems upgrades competently and using reasonable care, Plaintiffs and Class members failed to receive the benefit of their bargain. They are entitled to damages in an amount to be proven at trial.

105.    Apple is aware of its breach, and has admitted that its software updates throttle device performance, and its response is merely to offer reduced cost batteries until the end of 2018.  This is insufficient correction of Apple's breach.

## COUNT VI

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

106.    Plaintiffs repeat and re-allege the allegations in the paragraphs above as if fully set forth herein.

107.    Plaintiffs assert this cause of action on behalf of themselves and the Class.

108.    Plaintiffs and the Class entered into contracts with Apple in connection with their use of an iPhone, using an Apple iOS, and/or by downloading an iOS update, including Apple's software license.

109.   Plaintiffs and the Class gave consideration that was fair and reasonable, and performed all of their material obligations under the contracts.

110.   Implied in all contracts is a covenant of good faith and fair dealing, imposing a duty on the parties to act in good faith and deal fairly with one another.

111.   Under the terms of its software license for both iOS 10 and iOS 11 and their variants, Apple reserved the right, "at its discretion, [to] make available future iOS Software Updates for your iOS Device."  The terms of the software license "govern any iOS Software Updates provided by Apple that replace or supplement the Original iOS Software product, unless such iOS Software Update is accompanied by a separate license in which case the terms of that license will govern."

112.   Plaintiffs and Class members had a reasonable expectation that when Apple used its discretion to create and push any iOS software updates to their iPhones, that the updates would be for the benefit of the phones' functionality and security, and would not impose performance demands that the phones' hardware could not meet, throttle the phones' performance, or otherwise negatively impact the performance and utility of the phones.

113.   Apple nevertheless used its discretion to push iOS updates to the Subject iPhones that imposed performance demands that the phones' hardware could not meet, throttled the phones' performance, and otherwise negatively impacted the performance and utility of the phones.

114.   Plaintiffs and Class members had no reason to know either when they acquired their iPhones or when they downloaded iOS updates that Apple was pushing iOS updates that imposed performance demands that the phones' hardware could not meet, throttled the phones' performance, and otherwise negatively impacted the performance and utility of the phones.

115.   By providing the iOS updates described above, Apple breached its contractual duty of good faith and fair dealing.

116.   By reason of Apple's breach, Plaintiffs and Class members suffered damages in that their iPhones suffered a degradation in performance and utility and they were required and induced to purchase new iPhones and/or new batteries to their detriment and Apple's benefit.  Apple thus directly benefited from, and is being unjustly enriched by, the contractual breaches alleged herein.

117.   As a result, Plaintiffs and the Class sustained damages in an amount to be determined

by this Court.

## COUNT VII

### QUASI-CONTRACT CLAIM FOR RESTITUTION

118.     Plaintiffs repeat and re-allege the allegations in the paragraphs above as if fully set forth herein.

119.     Plaintiffs assert this cause of action on behalf of themselves and the Class.

120.     In the event it is found that Plaintiffs and the Class lack an adequate remedy at law, Plaintiffs and the Class are entitled to relief from Apple under quasi-contract principles.

121.     Through its conduct described above, Apple caused Plaintiffs' and Class members' iPhones to suffer degraded performance and utility, depriving them of the benefit of their purchase or lease of those iPhones and causing them to spend additional money on new iPhones as well as replacement batteries for their existing iPhones, all of which led to Apple's unjust enrichment at Plaintiffs' and Class members' expense.

122.     Under the circumstances, it would be inequitable for Apple to benefit from its conduct.

123.     To avoid injustice, Plaintiffs and the Class accordingly seeks restitution and/or disgorgement of profits in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

a)      certification of the proposed Class;

b)      appointment of the undersigned counsel as class counsel;

c)      an order enjoining Apple as detailed above, including enjoining Apple from engaging any further in the unlawful conduct set forth herein;

d)      a declaration that Apple's actions described above violate the UCL, constitute a trespass to chattels, and breach Apple's contractual duties;

e)      restitution and disgorgement of all profits wrongfully obtained;

f)      an award to Plaintiffs and the Class of all damages, including attorneys' fees and

23

reimbursement of litigation expenses, recoverable under applicable law;

h)      such other relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all applicable claims.

Dated:  January 9, 2018                    */s/ David Stein*

Eric H. Gibbs
David Stein
Joshua Bloomfield
GIBBS LAW GROUP LLP
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com
jjb@classlawgroup.com

Andrew N. Friedman
Douglas J. McNamara
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone:  (202) 408-4600
afriedman@cohenmilstein.com
dmcnamara@cohenmilstein.com

Attorneys for Plaintiffs

24